HARTFORD FIRE INS. CO. *v.* WILLIAMS.*

(Division B.   Jan. 9, 1927.)

[115 So. 199.   No. 26817.]

1. CONTRACTS. *Parties twenty-one years of age can make their own contracts; courts will enforce contracts by parties over twenty-one years of age, as written, where they are legal and not subversive of public policy.*

   Parties who are twenty-one years of age have a right to make their own contracts, and the courts will enforce the contracts as written, where they are legal and not subversive of public policy.

2. CONTRACTS. *Insurance. On cancellation of contract to pay soliciting agent commissions on policies approved and issued, where applications were not approved, agent held not entitled to commissions on insurance thereafter written on same property by another agent; to recover, party suing on contract must bring himself within its terms.*

Where, under the terms of a contract between an insurance company and a soliciting agent, it was provided that the insurance company had a right to cancel the contract of agency at any time, and that the plaintiff was only entitled to the commissions on the policies approved and issued by the company, and where the applications were not approved by the company, and the agency was canceled under the terms of the contract, a plaintiff is not entitled to commissions on contracts of insurance thereafter written on the same property secured by another agent. In order to recover, plaintiff must bring himself within the terms of his contract.

*Corpus Juris-Cyc. References: Contracts, 13CJ, p. 262, n. 65; p. 525, n. 37; p. 762, n. 21; Insurance, 32CJ, p. 1077, n. 63.

APPEAL from circuit court of Pearl River county.
HON. J. Q. LANGSTON, Judge.

Action by W. I. Williams against the Hartford Fire Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment entered for defendant.

*R. L. McLaurin* and *T. J. Wills,* for appellant.

Appellant cites: *Yorkshire Ins. Co.* v. *Bachus et al.,* 110 So. 27 (Ala.); *Mutual Life Ins. Co. of N. Y.* v. *Hodnette,* 147 S. W. 615 (Tex.); *National Union Fire Ins. Co.* v. *Nevils et al.,* 274 S. W. 503 (Mo.); Shipman on Common Law Pleading, p. 22; *Larkin* v. *Mitchell & Rowland Lbr. Co.,* 42 Mich. 296, 3 N. W. 904.

*J. C. Shivers,* for appellee.

Appellee cites: *Merriman* v. *McCormick Harvesting Machine Co.,* 96 Wis. 600; Mechem on Agencies, secs. 626-29.

ETHRIDGE, J., delivered the opinion of the court.

Williams was plaintiff in the court below and brought suit against the appellant for commissions amounting to four hundred ninety-nine dollars and ninety-six cents,

earned in soliciting insurance for appellant. It appears they entered into a contract by which Williams was to solicit insurance for the company and to receive twenty per cent. of the amount of premiums on policies approved and issued by the company, and that the company had the right to cancel the contract at any time. The plaintiff, Williams, signed an agreement with the company in which he stipulated as follows:

"1st. That I will not solicit an application on old, worthless, unprofitable, or unoccupied buildings, or on buildings with unsafe chimneys, flues, or pipes; and if it comes to my knowledge that an undesirable risk is insured in the Hartsford, I will immediately report the fact to said company.

"2d. That I will not knowingly permit over-valuation on any building upon which I take an application for insurance.

"3d. That I will personally inspect all stoves, pipes, furnaces, flues, and chimneys, and see that their true condition is stated in the application.

"4th. That I will ask the applicant the true title of the property proposed to be insured, and will see that he plainly states in the application over his own signature what he says regarding it.

"5th. That I will make a personal survey and inspection of all property proposed to be insured, and will see that applicant gives the size, height, material, age, condition, and distance from each other and from all buildings within one hundred fifty feet thereof.

"6th. That I will ascertain from the applicant and see that he states in the application by what and to what amount the property proposed to be insured is incumbered, and how much (if any) other insurance there is on the property, and in what companies.

"7th. That on all credit business I will use my best endeavors to collect *in cash* the commissions from the applicant at the time application is made.

"8th. That I will not accept notes for premiums for proposed insurance when applicant does not own real estate worth at least two thousand dollars over and above all incumbrances.

"9th. That I will return to the company all unearned premiums on canceled policies and on notes that are not paid at maturity.

"10th. And it is understood and agreed that, in order to acquire the right to charge to the agent's account advanced commissions allowed on default notes and unpaid premiums, the said company shall not be required to sue the makers of such notes or policyholders.

"11th. That I will not take applications on any building or any property for more than three-fourths of their actual cash value.

"12th. That if any note or installment of a note is not paid at maturity, I will, if instructed so to do, attend to the collection of said note or installment, without expense to the company.

"13th. That if the company should refer to me any losses in my field, I will adjust the same without additional compensation for time or expense.

"14th. I hereby faithfully promise and agree that so long as I represent the Hartford Fire Insurance Company I will not accept the agency or represent any other installment writing company; that if at any time I desire to accept the agency of any other company, I will, before entering upon any such service, give the Hartford Fire Insurance Company thirty days' notice in writing.

"15th. That I will faithfully observe the foregoing rules and all subsequent instructions as stated below. And further, I hereby agree that I will post myself thoroughly as to the instructions furnished me by the company, and that I will faithfully observe same.

"16th. I also agree to faithfully and promptly obey any future orders and instructions said company may give me through the officers or the manager of the Southern Farm Department, or through any of the company's

state or special agents, or by any other person duly authorized by the company.

"17th. This agreement can be terminated at any time at the pleasure of the Hartford Fire Insurance Company and nothing herein shall be construed to the contrary."

On the back of this agreement appears the following:

"In further consideration of my appointment as agent for the Farm Department, Hartford Fire Insurance Company, I hereby agree to pay the said company all unearned commissions on premiums on policies that are canceled, and on notes that are not paid at maturity. This agreement refers to policies issued through former agents (the Picayune Insurance Agency, H. K. McKee, Mgr.), as well as policies that may be issued thru my agency."

When this contract was signed, Williams paid the company a sum of money due by his predecessor agency in said company. Thereafter Williams secured policies on dwellings, a list of which was made an exhibit to the declaration. These applications were forwarded to the company, which declined to write the policies and canceled the agency. It was contended by Williams that, after these applications were forwarded and the contract canceled, the company wrote policies on some of them which were solicited by an agency in another county, and for this reason he should not be bound by the provisions of the contract; that the company did not act in good faith in reference to said matters; and he offered to prove that some of the policies solicited had subsequently been written by the company, but did not show in his offer any evidence that the policies so written by the company were identical with the policies he had solicited and transmitted to the company.

It was further developed by Williams' testimony that the company desired him, when writing farm property, to secure additional insurance on out buildings, live stock, and other things, because the risk of insuring dwelling

houses thereon was greater. The applications filed by Williams with the company did not contain applications for insurance on other than dwellings.

The company, at the close of the plaintiff's evidence requested a peremptory instruction, which was refused. Other instructions were requested and refused and have been assigned for error, but they do not warrant notice as the peremptory instruction for the defendant should have been granted.

The parties, of course, have a right to make their own contracts, and the court will enforce the contract as written, where legal. Under the terms of this contract, the right to cancel same at any time was given, and the plaintiff was only entitled to commissions on policies approved and issued by the company. Having secured no such policies, there was no right. It is true, the contract made by him appears to be a hard one, and that he spent money in an effort to secure business for the company, but he made his own contract and is not entitled to compensation until he brings himself within the terms of his contract. There is not sufficient proof in the record to show that the company was not acting in good faith in refusing to issue policies and in canceling the contract.

It follows, therefore, that the judgment of the court should be reversed and judgment rendered here for appellant.

Reversed, and judgment here for appellant.

*Reversed.*