Zouboukos, et al. *v.* Costas

No. 40692          March 3, 1958          100 So. 2d 781

*Young, Daniel* and *Coker,* Jackson, for appellants.

*Watkins, Edwards & Ludlam*, Jackson, for appellee.

KYLE, J.

The appellants, Peter Zouboukos and James Zoubou-kos, doing business as a partnership under the trade name of the Elite Cafe, as plaintiffs, filed suit in the Circuit Court of Hinds County against the appellee, Theo Costas, defendant, for the recovery of certain taxes which the

plaintiffs alleged the defendant had obligated himself in writing to pay on real property owned by the appellants and situated at 141 East Capitol Street in the City of Jackson.

The declaration was filed on August 4, 1956. The amount of taxes sued for was $1,406.88, same being the amount of the increase in ad valorem taxes levied and assessed against the above mentioned property for the year 1955 over and above the amount of ad valorem taxes levied and assessed against said property for the year 1947. A copy of the agreement upon which the plaintiffs based their claim that the defendant had obligated himself to pay said taxes was attached to the plaintiffs' declaration. That agreement, which bears date July 30, 1947, is as follows:

"WHEREAS, this day, Chris Costas has conveyed the Ritz Coffee Shop to Peter Zouboukos, James Zouboukos and Paul N. Apostle, and

"WHEREAS, Theo Costas desires to make an agreement for a valuable consideration, not herein recited, but the receipt of which and sufficiency of which is hereby acknowledged by the aforesaid Theo Costas, the following agreements are made between the parties:

"1. Theo Costas individually, agrees to pay the increase in taxes over and above the 1947 ad valorem taxes as assessed against the property known as 141 East Capitol Street, Jackson, Mississippi, now occupied by Ritz Coffee Shop, which obligation falls under the lease from Miss Tenie Messina to Peter Zouboukos, James Zouboukos and Paul N. Apostle, said lease dated July 30, 1947 and herein referred to.

"The obligation of Theo Costas to pay the increase in taxes shall be limited to the structure as it now stands and no part of any taxes attributable to additional building or improvements shall be paid by Theo Costas.

"2. In addition, Theo Costas agrees to pay the sum of One Thousand and No/100 ($1,000.00) Dollars in cash to Miss Tenie Messina as a consideration for the cancellation of the existing lease.

"3. For the considerations herein named, Peter Zouboukos, James Zouboukos and Paul N. Apostle agree that for a period of ten (10) years from the date hereof, that the garbage of the Ritz Coffee Shop shall be taken by Theo Costas without any charge to the aforesaid Theo Costas.

"4. One of the considerations for the promise of Theo Costas to assume the tax obligation hereinabove described is a promise of Peter Zouboukos, James Zouboukos and Paul N. Apostle to make available the garbage of Ritz Coffee Shop to Theo Costas without cost to Theo Costas.

"Witness our signatures this, the 30th day of July, 1947.

> /s/ Theo Costas
>    Peter Zouboukos
>    James Zouboukos
>    Paul N. Apostle."

When the case was called for trial on January 7, 1957, the plaintiffs asked leave to amend their declaration so as to include a demand for the part of the ad valorem taxes levied and assessed against the property for the year 1956, which the defendant was obligated to pay, amounting to $1,470.35; and the declaration was amended by agreement of the parties, to include that part of the 1956 taxes, for which it was alleged the defendant was also liable, making a total amount of $2,877.23.

By agreement of the parties a trial by jury was waived, and the cause was heard by the circuit judge on the declaration of the plaintiffs, the answer of the defendant, and oral testimony and documentary evidence offered on behalf of the respective parties.

The facts developed during the hearing were substantially as follows:

On July 30, 1947, Peter Zouboukos and his brother, James Zouboukos, and Paul N. Apostle purchased from Chris Costas the "Ritz Coffee Shop" restaurant, which was being operated by Chris Costas for himself or his brother, Theo Costas, in the building located at 141 East Capitol Stree, in the City of Jackson, for the sum of $43,000. The purchase was evidenced by a bill of sale signed by Chris Costas conveying the above mentioned property to the purchasers. An unpaid balance of $23,-000 of the purchase price was evidenced by an installment purchase money note for said sum of $23,000 payable to Chris Costas, and secured by a chattel mortgage deed of trust on the property, which note was assigned by Chris Costas to Theo Costas. On the same date a lease contract was entered into by and between Miss Tenie Messina, the owner of the building and lot occupied by the Ritz Coffee Shop, as lessor, and Peter Zouboukos, James Zouboukos and Paul N. Apostle, as lessees, whereby the lessor leased said building and lot to the lessees for a term of ten years, beginning August 1, 1947, for a monthly rental to be paid as provided therein. The lease contract contained an express provision as follows: "It is further agreed and understood, that as a part of the consideration for this lease, the lessees bind and obligate themselves, their heirs and assigns to pay, annually, the amount of any increase in the amount of taxes levied on said property hereby leased over and above the amount of taxes assessed against said property for the year 1947, * * *."

On the day the above mentioned lease was signed Theo Costas and Peter Zouboukos, James Zouboukos and Paul N. Apostle executed the memorandum agreement, which has been set out in full above.

Peter Zouboukos, James Zouboukos and Paul N. Apostle took possession of the Ritz Coffee Shop property on

August 1, 1947, and continued thereafter to operate a restaurant business on the leased premises, as partners, under the trade name of the Elite Cafe, until June 8, 1954, when the partnership was dissolved by a decree of the chancery court and the assets of the partnership were ordered to be sold by a commissioner appointed by the court. The sale was made at public auction on June 14, 1954, and Peter Zouboukos and James Zouboukos bid for the property the sum of $98,000, which was the highest bid received. The sale was duly reported to the court and was confirmed, and a bill of sale of the partnership assets and assignment of the lease was duly executed by the commissioner to the purchasers; and the restaurant business was thereafter conducted and carried on by Peter Zouboukos and James Zouboukos, as partners. On March 1, 1955, Peter Zouboukos and James Zouboukos purchased from Tenie Messina the leased premises occupied by the partnership, and the property was conveyed to Peter Zouboukos and James Zouboukos by warranty deed. Rent checks were thereafter issued by the partnership to Peter and James Zouboukos in payment of the monthly rental, and the checks were deposited in another bank account in the name of Peter and James Zouboukos.

After the execution of the memorandum agreement dated July 30, 1947, Theo Costas paid each year the portion of the taxes levied and assessed against the property known as 141 East Capitol Street, in the City of Jackson, which he had obligated himself to pay under the terms of the agreement. Costas had delivered to him the garbage of the Elite Cafe, which was made available to him from day to day, and hauled it away, as provided for in the agreement. But about three months after the purchase by Peter Zouboukos and James Zouboukos of the building and lot occupied by them, Costas ceased to pick up the garbage; and Costas refused to pay the portion of the taxes levied and assessed against the property

for the years 1955 and 1956, which by the terms of the memorandum agreement he had obligated himself to pay.

The plaintiffs therefore filed suit to recover the amount of the taxes alleged to be due and owing to them according to the terms of the agreement.

At the conclusion of the hearing the trial judge took the case under advisement, and on March 12, 1957, rendered a judgment in favor of the defendant. In his written opinion, which has been made a part of the record, the trial judge held that the plaintiffs were not entitled to recover any part of the taxes levied and assessed against the property for the years 1955 and 1956, for the reason that there had been a merger of the leasehold estate in the fee simple estate by the conveyance of the property to Peter Zouboukos and James Zouboukos on March 1, 1955, and that the lease contract had come to an end and all obligations under the lease contract had been terminated.

From the judgment rendered against them the plaintiffs have prosecuted this appeal.

Two points are argued by the appellants' attorneys as ground for reversal of the judgment of the lower court: (1) That the court erred in holding that there was a merger of the leasehold estate of the Zouboukos Brothers partnership in the fee when Peter Zouboukos and James Zouboukos acquired title to the leased premises; and (2) that the court erred in holding that the defendant's obligation to pay the tax increase as provided for in the memorandum agreement dated July 30, 1947, came to an end at the time of the purchase of the leased premises by Peter Zouboukos and James Zouboukos.

The appellee's attorneys on the other hand contend that the obligation of the appellee to pay the additional taxes levied and assessed against the property was based upon the assumption of the continuance of the obligation of the appellants to pay under the terms of their lease

agreement with Miss Tenie Messina such excess taxes, and that the obligation of the appellee ceased when the leasehold estate was merged in the fee simple title conveyed to the appellants by the lessor.

We think the court erred in its holding that the appellee's obilgation to pay the tax increase was terminated by the conveyance of the leased premises to Peter Zouboukos and James Zouboukos prior to the expiration of the 10-year period covered by the lease referred to in the memorandum agreement.

That agreement was made by the appellee, Thoe Costas, "for a valuable consideration," the receipt and sufficiency of which were expressly acknowledged by Theo Costas in the instrument. The agreement provided that "Theo Costas, individually, agrees to pay the increase in taxes over and above the 1947 ad valorem taxes against the property known as 141 East Capitol Street, Jackson, Mississippi, now occupied by Ritz Coffee Shop, which obligation falls under the lease from Miss Tenie Messina to Peter Zouboukos, James Zouboukos and Paul N. Apostle, said lease dated July 30, 1947, and herein referred to." The lease was for a term of ten years begining August 1, 1947; and by the terms of the memorandum agreement Costas, for a valuable consideration, agreed to pay the amount of the increase in taxes during the ten-year period specified in the lease, and thereby relieve Peter Zouboukos, James Zouboukos and Paul N. Apostle from liability for the payment of the amount of the increase in said taxes. The liability which Costas assumed under the memorandum agreement was an entirely independent liability, which he agreed to assume for a valuable consideration. It was not a matter of any concern to Costas whether the ownership of the property known as 141 East Capitol Street, in the City of Jackson, remained in Miss Tenie Messina, or whether the title was conveyed to other parties. Costas was obligated to pay the increase in the taxes during the period covered by the lease; and Costas

was not released from his liability for the payment of the taxes by the lessor's conveyance of the fee simple title to Peter and James Zouboukos two years and five months prior to the expiration of the ten-year period.

■■■ We are not concerned here with the doctrine of legal merger. "Indeed," as stated in Pomeroy's Equity Jurisprudence, Fifth Ed., Vol. 3, p. 144, par. 787, "the doctrine of legal merger is now practically extinct both in England and in the United States, for equitable principles are generally applied by the courts of both countries. The doctrine is not now operative, either at law or in equity, if thereby the intention of the parties will be frustated." Consequently, the courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united. Mobley v. Harkins, 14 Wash. 2d 276, 128 P. 2d 289, 143 A. L. R. 88. It is undoubtedly true that, generally, a tenancy for years merges in a freehold estate, when the tenancy and the freehold are held by one person at one and the same time without any intermediate estate, and the lease is thereby terminated. "Termination does not, however, always follow the acquisition of the landlord's title by the tenant. The question whether or not a merger affecting a termination of the lease results depends on what will best serve the interests of justice and the intention of the parties." 51 C. J. S., p. 666, Landlord and Tenant, par. 94.

The appellee in this case owned no interest in the leasehold estate or the fee which could be affected by the doctrine of legal merger at the time Peter and James Zouboukos acquired the landlord's title to the leased premises. For that reason we need not consider the question whether a merger was effected by the appellants' acquisition of the fee title to the premises.

■■■ The question that we are concerned with here is the appellee's contract liability under the memorandum

agreement dated July 30, 1947. In paragraph 1 of that agreement the appellee obligated himself to pay the increase in the ad valorem taxes during the ten-year term covered by the lease contract referred to in the agreement. In paragraphs 3 and 4, Peter and James Zouboukos and Paul N. Apostle promised and agreed that they would make available to the appellee without cost to him the garbage waste of the coffee shop for the same ten-year period, and the record shows that the promise made by the appellants in those two paragraphs was faithfully kept and performed. The agreement did not provide that the appellee should be released from the obligation which he had assumed, in the event the appellants, who were the lessees of the property, should thereafter acquire the fee simple title to the property before the expiration of the ten-year period; and there is no reason to believe that any such idea existed in the minds of any of the parties at the time the agreement was executed. Where the terms of an agreement are legal and unambiguous, and the meaning of the agreement is clear, the court must enforce the agreement as written. Hartford Fire Ins. Co. v. Williams, 149 Miss. 123, 115 So. 199; American Bankers' Ins. Co. v. White, 171 Miss. 677, 158 So. 346; World Fire & Marine Ins. Co. v. King, 187 Miss. 699, 191 So. 665; Dale, et al. v. Case, et ux., 217 Miss. 298, 64 So. 2d 344.

We think the trial judge erred in holding that the appellee was not liable for the payment of the amount of the increase in the advalorem taxes levied and assessed against the property for the years 1955 and 1956.

The judgment of the lower court is therefore reversed, and judgment will be entered here in favor of the appellants for the sum of $2,877.23, which is the amount sued for, together with interest thereon at the rate of six per cent per annum from the date of the rendition of the judgment appealed from.

Reversed and judgment rendered here for the appellants.

*Roberds, P. J.,* and *Hall, Lee* and *Gillespie, JJ.,* concur.

## ON SUGGESTION OF ERROR

HALL, J.

The appellee has filed a suggestion of error in which he claims that instead of rendering judgment for the full amount of taxes accrued to date which Costas agreed in writing to pay, we should have given him credit for the amount which the appellants received for sale of the garbage from the Elite Cafe.

It is true that the appellants agreed that they would make available to the appellee without cost to him the garbage waste from the Elite Cafe, which agreement they faithfully kept and performed, but Costas for some reason suddenly decided that he would not take the gar-bage any more and accordingly the appellants gave it to another party in order to get rid of it, and after the expiration of a period of about one month the other party estimated that the garbage was worth $30 per month and voluntarily began to pay the appellants that amount.

The appellants did not in any manner breach their agreement to make the garbage available to Costas.

As to the legal point raised, the appellee in his answer to this suit in the lower court did not claim or contend by plea, set-off, counter-claim, or otherwise that he was entitled to credit for $30 per month. The matter was not submitted to the lower court or passed upon by the lower court and in the Supreme Court the appellee did not prosecute a cross appeal in connection with this claimed $30 per month for which he was entitled to credit, and did not in any manner in the briefs or the oral argument submit to this Court a claim that he was entitled to this credit. Consequently the suggestion of error is over-ruled.

Suggestion of error overruled.

*Roberds, P. J.,* and *Lee, Kyle* and *Gillespie, JJ.,* concur.