ROBERTS, et al. *v.* CORUM, et al.

No. 40933          June 1, 1959          112 So. 2d 550

810

*Satterfield, Shell, Williams & Buford,* Jackson; *L. A. Pacific,* Laurel, for appellants.

*Brunini, Everett, Grantham & Quin,* Jackson and Vicksburg; *Green, Green & Cheney,* Jackson, for appellees.

Holmes, J.

On August 22, 1944, Vardamen Walley and his wife, Lula Walley, executed an oil, gas and mineral lease to David J. Corum covering an undivided one-half interest in lands in Smith County, Mississippi, described as follows: The W½ of Lot 12, less 8 acres on the south side of Lot 12, and Lot 13, less the south 15½ acres on the south side of Lot 13; all in Section 29, Township 10 N, Range 13 W.

Lot 12 lies in the east half of said Section 29, and Lot 13 lies in the west half of said Section 29.

The lease was for a primary term of ten years from its date, "and as long thereafter as oil, gas or other mineral is produced from said land or lands with which said land is pooled thereunder."

On December 16, 1947, the said Vardamen Walley and his wife, Lula Walley, executed an oil, gas and mineral lease to C. K. Roberts covering the same land and mineral interest therein as that contained in the lease theretofore executed to David J. Corum.

This action originated on January 11, 1955, on the filing of an original bill in the Chancery Court of Smith County by the appellants, C. K. Roberts and others, as complainants, against the appellees, David J. Corum and others, as defendants. The action seeks the cancellation of the aforesaid lease executed to David J. Corum upon the ground that the same had expired by its terms. The appellants are C. K. Roberts and those claiming interests as grantees or assignees under and through the aforesaid lease executed to C. K. Roberts. The appellees are David J. Corum and those claiming interests as grantees or assignees under and through the aforesaid lease executed to David J. Corum.

If it be held under the facts of this case that the Corum lease has expired by its terms as contended by appellants, then the said lease executed to C. K. Roberts, commonly referred to as a "top" lease, will come into effect, and the appellants will be entitled to the relief prayed for in their original and amended bill of complaint. On the other hand, if it be held under the facts of this case that the Corum lease has not expired by its terms as contended by appellees, then the relief prayed for by the appellants will be denied.

The vital issue in this case, therefore, was and is whether or not under the facts of this case the Corum lease expired by its terms. The learned chancellor resolved this issue against the appellants and rendered a decree adjudging the Corum lease to be in force and effect, and confirming the title of the appellees therein, and cancelling the adverse claims of the appellants thereto.

The appellants say: "The bill of complaint was predicated on the basis that when and because production from the unit well ceased for a period of more than sixty days, during the last year of the so-called 'primary term,' without any operations commenced for reworking or additional drilling during such sixty-day period, the lease (Corum lease) expired by its terms." It is obvious, therefore, that in solving the question presented on this appeal the terms of the lease must be looked to and applied to the facts as found to be true by the chancellor. No attack is made upon the chancellor's findings of fact and we must, therefore, view the same as established. In fact the appellants concede that in view of the chancellor's findings the question presented on this appeal is largely one of law to be determined by the construction to be placed upon the terms of the lease. Pertinent provisions of the Corum lease are as follows:

"Paragraph 2. Subject to the other provisions herein contained, this lease shall be for a term of ten (10) years from this date. (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land or lands with which said land is pooled hereunder."

"Paragraph 5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor or to the credit of Lessor in the First National Bank at Laurel, Mississippi, * * * * the sum of Twenty seven and no/100($27.00); (herein called rental), which shall cover the privilege of deferring commencement operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. * * * * The

down cash payment is consideration for this lease according to its terms and shall not be allocated as mere rental for a period."

"Paragraph 6. If prior to discovery of oil, gas or other minerals on said land or on acreage pooled therewith lessee should drill a dry hole or holes thereon, or if after discovery of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations within sixty days thereafter, or if it be within the primary term, commences or resumes the payment or tender of rentals, or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of completion of dry hole or cessation of production."

"Paragraph 9. * * * in the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall reasonably develop the acreage retained hereunder, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil, gas or other mineral in paying quantities."

The chancellor found the following: "The delay rentals provided for in the Corum lease were paid until 1948. There after a portion of the lands here in question and described in the Corum lease were pooled and unitized with other lands and drilling operations started on said unit. A gas well was completed on June 21, 1948, and was designated as Union Producing Company's J. B.

Ruffin A-1 Well. Production started therefrom on July 13, 1948, and continued in paying quantities until on or about August 1, 1953. Actual production continued thereafter until reworking operations were commenced the first week of April 1954. The well was finally shut down on April 8, 1954. On May 7, 1954, operations were begun for the drilling of the Ruffin A-2 well, the same being designated as a gas unit and containing lands here involved. The well was completed as an oil unit on or about July 21, 1954. Such unit was composed of 40 acres which did not include any of the lands involved in this suit, but immediately thereafter, August 15, 1954, drilling operations were started on a unit composed of part of the lands situated in Lot 12 of Section 29, along with other lands. This well was completed as a producer of oil and continues to produce. There is no dispute that on August 22, 1954, this land was producing oil or gas in commercial quantities or was pooled with other lands that were so producing.''

It is admitted that the lessees also paid the delay rentals to the end of the primary term on that portion of the Corum lease that was not included in the gas unit.

The basic contention of the appellants is that applying Paragraph 6 of the Corum lease hereinbefore quoted, the said lease expired by its terms because the appellees failed to commence drilling or reworking operations within sixty days after cessation of production, and that the word ''production'' as used in the lease means ''production in paying quantities.'' The facts to be considered in connection with this contention are all related to the primary term of the Corum lease. The chancellor found as a fact that there is no showing of fraud or bad faith on the part of the appellees. While there are other points raised in the elaborate briefs of counsel, the determination of the aforesaid contention of the appellants adverse to them will be decisive of the case before us. We therefore address ourselves to that contention, since,

after an assiduous study of the voluminous record in this case and of the excellent briefs of counsel, we have concluded that the aforesaid contention of the appellants should not be permitted to prevail.

Pertinent parts of Paragraph 6 of the Corum lease provide as follows: "If prior to the discovery of oil, gas or other mineral on said land *or on acreage pooled therewith,* Lessee should drill a dry hole or holes thereon, or if *after the discovery of oil, gas or other mineral, the production* thereof should cease from any cause, this lease shall *not* terminate *if * * *·* or if it be within the primary term, commences or resumes the payment or tender of rentals, or commences operations for drilling or reworking on or before the *rental paying date next ensuing after the expiration of sixty* (60) *days from date of completion of dry hole or cessation of production.* (Emphasis ours).

We consider the provisions of the Corum lease in the light of the established facts. The Corum lease was dated August 22, 1944, and was for a primary term of ten years from its date. The delay rentals were paid to August 22, 1948. Thereafter a portion of the lands in the lease were pooled and unitized with other lands and drilling operations were started on the unit. The delay rentals to the end of the primary term were paid on that portion of the land not included in the unit. A gas well was completed on the unit on June 21, 1948 and production started therefrom on July 13, 1948, and continued in paying quantities until August 1, 1953. *Actual production continued thereatfer until reworking operations were begun the first week of April 1954.* The Well was finally shut down on April 8, 1954. On May 7, 1954, the drilling of another well was begun and completed as an oil unit on or about July 21, 1954, and thereafter on August 15, 1954, drilling operations were commenced on a unit composing a part of the land here involved. This well was completed as a producing oil well and continues

to produce. It is without dispute that on August 22, 1954, the end of the primary term, the land in question was producing oil or gas in commercial quantities or was pooled with other lands that were so producing.

It is important to note that from the gas well first completed on June 21, 1948, there was production in paying quantities from July 13, 1948 to August 1, 1953.

It is further important to note that the chancellor expressly found that after August 1, 1953, there was *actual production* which continued until reworking operations were commenced the first week of April 1954, and that the well was actually shut down on April 8, 1954.

The appellants contend that upon the cessation of production in paying quantities on August 1, 1953, the lessees had the election under Paragraph 6 of this lease to commence drilling or reworking operations within sixty days thereafter, and that because of their failure so to do, the lease expired by its terms. The lease does not so provide and we are unable to bring ourselves into accord with this contention. The applicable portions of the lease provide that if after discovery of oil, gas or other mineral, the *production* thereof should cease from any cause, the lease shall not terminate *if*, within the primary term, the lessee commences or resumes the payment or tender of rentals, or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of cessation of production. Applying the facts of the case to the terms of the lease, we think the answer to the contention of the appellants is two-fold. In the first place, the appellants argue that the word "production" should be construed to mean "production in paying quantities," and that, therefore, *August* 1, 1953 should be considered as the date on which cessation of production occurred.

There were no drilling or reworking operations commenced within sixty days after August 1, 1953. It

cannot be disputed, however, in view of the chancellor's finding that actual production continued from August 1, 1953 to the commencement of reworking operations in the first week of April 1954. There is nothing in the lease providing for its expiration for the failure of the lessee to produce oil or gas in *paying quantities* during the primary term of the lease. There is nothing ambiguous in the use of the word "production" and we are not authorized to enlarge upon it, or detract from it, or to ascribe to it a meaning which the parties themselves did not see fit to ascribe to it. The instrument, therefore, must be construed according to its plain language. Sumter Lumber Company, Inc. v. Skipper, et al., 183 Miss. 595, 184 So. 296. If the parties had intended that the word "production" should mean production in paying quantities, it would have been a very easy thing to write that into the lease. They did not see fit to do so. Contracts are solemn obligations and it is not the function of the courts to make contracts for parties, but rather to give effect to them as written. The contract fixed the time for the commencement of drilling or reworking operations after the cessation of production. We cannot now write into that contract the words "production in paying quantities" without doing violence to the solemn rights of the parties to make their own agreements. Drilling or reworking operations were commenced within sixty days after cessation of actual production in the first week of April 1954, and there was actual production at the time of the end of the primary term and after.

In the case of Murphy v. Garfield Oil Company (Okla.), 225 Pac. 676, the Court said: "If an oil well or gas well was drilled, whether oil or gas was in paying quantities or not just so oil or gas was obtained— not a dry hole—one such well was sufficient to prolong the life of the contract for the intiative period, and to

keep the contract in force after the initiative period oil or gas in paying quantities were necessary.''

In the case of Baker v. Huffman (Kansas), 271 Pac. 2d 276, the Court said: ''We find nothing in the contract providing for a forfeiture or cancellation of the lease for the failure of the lessees to produce oil and gas in paying quantities during the primary term of the lease. The failure of lessees to produce or failure, alone, of production in paying quantities during the primary term of the lease did not result in a defeasance ipso facto. To hold otherwise would be to read into the lease express provisions which did not exist, and this we cannot do.''

We are cognizant of the fact that many courts hold to the contrary and they are the authorities upon which the appellants rely. We think, however, that it is the sounder policy to adhere to the principles so deeply embedded in our jurisprudence that the plain and unambiguous language of a contract should be construed as written. Secondly, we are of the opinion that even if it be conceded that the word ''production'' as used in the lease should be construed to mean production in paying quantities, the lease did not terminate upon the cessation of production in paying quantities under the facts of this case.

Paragraph 6 of the lease expressly provides that if after the discovery of oil, gas or other mineral the production should cease from any cause, during the primary term, the lease shall not terminate, if the lessee commences or resumes the payment or tender of rentals, or commences operations for drilling or reworking *on or before the rental paying date next ensuing after the expiration of sixty days from the date of cessation of production.* August 1, 1953 was the date of cessation of production in paying quantities. This was within the primary term. The expiration of the primary term of the lease was August 22, 1954. The next anniversary date of the lease after the cessation of production on

August 1, 1953 was August 22, 1953. This, however, was within sixty days from the date of cessation of production. It is apparent, therefore, that from the date of cessation of production in paying quantities there was no rental paying date *next ensuing after the expiration of sixty days* from date of cessation of production. The lease, therefore, clearly remained in force and effect during the remainder of the primary term without obligation of the lessees during that period to pay rentals or commence drilling or reworking operations. The appellants contend that because there was no rental paying date next ensuing after the expiration of sixty days from date of cessation of production, the lease terminated for the failuer of the lessees to commence drilling or reworking operations within sixty days from cessation of production. We think the contrary is true. Paragraph 6 of the lease expressly provides that it *shall not terminate if* the lessees meet certain conditions. These conditions do not arise and it cannot be charged that there was non-compliance therewith on the part of the lessees. Therefore, the effect of the paragraph when applied to the facts is to provide that the lease shall not terminate.

A case strikingly analagous to the case at bar, and one in accord with our views, is the case of Colby v. Sun Oil Company (Texas), 288 S. W. 2d 221. There the Court in a well-reasoned opinion dealt with a lease and with a state of facts almost identical with that with which we are here confronted. In holding that the lease there involved did not terminate, the Court said: "Appellant's argument referable to the proper construction and application of paragraph 5 (paragraph 6 in Corum lease) to the facts in this case is two-fold. First, he takes the primary position that by the plain and unambiguous terms of the paragraph the lease terminated by its own terms upon the completion of the dry hole at a time when there was no rental paying date next ensuing after the expiration of three months from the date of the comple-

tion of the dry hole. It will be seen that the dry hole, drilling of which was commenced on April 30, 1948, was completed and abandoned on May 29, 1948, a period of 51 days before the next rental paying date. It will further be seen that the lease provided for no rental paying date 'next ensuing after the expiration of three months from the date of completion' of such dry hole. Appellant argues, therefore, that since the condition which must be fulfilled to extend the term of the lease cannot be met, the lease automatically terminates. The error which we see in appellant's argument rests in his contention that the words 'shall not terminate if' as used in paragraph 5 are identical in meaning and equivalent in operative effect with the words 'shall terminate unless.' He concludes, therefore, that since the condition predicated upon the word 'unless' cannot be fulfilled, the only effect of the paragraph is to say that the lease shall terminate. It appears to us that appellant impute a meaning to the words employed in paragraph 5 which is directly opposite in operative effect to that which the words express. The words employed are 'shall not terminate if.' Therefore, when it is considered that the condition predicated on the word 'if' cannot occur, the effect of the paragraph is to say that the lease shall not terminate.''

For the reasons hereinbefore stated, and after a careful study of the record in this case and the briefs of counsel, we have reached the conclusion that the learned chancellor was correct in holding that the Corum lease here involved was not terminated but remained in full force and effect, and in confirming the title of the appellees in the lease, and in cancelling the adverse claims of the appellants. We deal with no other questions raised since the conclusions which we have reached are decisive of the case. The decree of the court below is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Ethridge* and *Gillespie, JJ.,* concur.