LEE, Justice,
for the Court:
Edward E. Miller [Miller] filed suit in the Chancery Court of Tishomingo County against George Lambert [Lambert], Thomas D. Keenum, Sr. [Keenum], Magnolia Limestone Products, Inc. [Magnolia], Real Estate Leasing Company, Inc. [Leasing Company], Mississippi Stone Co., Inc. [Stone Company] and other individuals, who were later dismissed from the suit, seeking an accounting and payment of royalty interests in limestone, sand, gravel and clay on certain tracts of land and seeking to impress a lien *920 on the minerals in such tracts. At the conclusion of the trial, the chancellor sustained Miller’s claim to, and interest in, minerals on one of three (3) tracts involved, and disallowed his interest in the other two (2) tracts. Miller has appealed and the defendants have cross-appealed from that judgment.
The question before the Court is whether or not Miller was vested with a royalty interest which extended to any, or all, of three (3) properties involved.
In 1967, M. C. West, Inc. employed appellant, an individual who was knowledgeable and experienced in the limestone business, to explore for a deposit of limestone in the State of Mississippi which could be developed commercially. Appellant spent his full time in that employment, went upon various properties, drilled core samples, secured test results, and examined public documents, covering parts of the north half of Mississippi. After conducting those explorations, he concluded that there was a limestone deposit in Tishomingo County in sufficient quantity and of proper quality to be developed commercially. There was no other limestone quarry in Mississippi, and his discovery raised the possibility of tremendous returns for the developer.
Pursuant to the authority of West, appellant began to negotiate with landowners in the area of the limestone deposit and negotiated with owners of three properties which contained most of the limestone deposit, viz: the Sanders, Gant and Hiawasee properties. He obtained a mineral lease on the Sanders property, and was negotiating for the Gant and Hiawasee properties when West, after having spent approximately eighty thousand dollars ($80,000), on the project, decided not to proceed further. West agreed to transfer unto appellant all the rights which his corporation had obtained for the sum of ten thousand dollars ($10,000). An option was drawn to that effect to be exercised within sixty (60) days.
Appellant realized that, in order to develop the limestone quarry, he needed someone knowledgeable in the field and financially able to finance the operation. He became acquainted with Lambert, who possessed those qualifications, and who also operated a quarry in the State of Tennessee. Lambert investigated the possibilities of the limestone quarry, was convinced of its potential, and entered into an agreement with appellant whereby appellant’s option from West would be exercised by Lambert. He and appellant agreed that they would work together on the project and appellant would be paid a royalty of five cents (5$) per ton of the limestone produced, and seventy-five hundred dollars ($7,500) per year as an advance against the five-cent royalty. Pertinent parts of the Lambert agreement with appellant follow:
“Lambert agrees to pay Miller a royalty of five cents per ton on each ton of such product that leaves the said property, and, in addition, Lambert agrees to assume all the responsibilities imposed upon the Lessee in the said leases, including payment to the Lessors of a royalty of five cents per ton.
Lambert agrees to pay Miller a minimum of $7,500.00 per year, on a monthly basis, beginning April 1, 1969, whether or not they have produced any minerals. This royalty of $7,500.00 shall be applied against future production based on five cents per ton.
Regardless of the amount of minerals mined, the said minimum royalty of $7,500.00 per year shall be paid to Miller as long as it is economically feasible to mine said minerals.
In the event Lambert should purchase any of the said pieces of land, the royalty to Miller shall continue as hereinabove provided.
If Lambert should sell, assign or trade their rights under this agreement, it is understood that the obligations and responsibilities set forth herein shall be imposed upon the assignee or buyer.
Lambert acknowledges that Miller discovered this mineral deposit and has made it possible for Lambert to do business in this regard. If Lambert should open any other business related to this industry, Lambert agrees to pay a royalty *921 of five cents per ton on minerals produced from such other source. In return for this, Miller agrees not to create any competition and to be completely loyal to Lambert as long as Lambert fulfills the obligations under this agreement.”
Difficulties arose in the development and operation of the business. Equipment was purchased which was not suitable for the mining operation and problems arose in the limestone deposit itself. Without detailing the complicated problems that arose in connection with the business, Magnolia Limestone Products, Inc. was organized and succeeded Lambert; Real Estate Leasing Company, Inc. succeeded Magnolia; and Mississippi Stone Co., Inc. succeeded Real Estate Leasing Co. Stone Company is now operating the quarry. Suffice to say, Magnolia’s geologist found that the deposit consisted of thirteen million nine hundred eighty thousand (13,980,000) tons of limestone on the Gant property, twenty-four million (24,000,-000) tons on the Hiawasee property, and twenty-one million eight hundred thousand (21,800,000) tons on the Sanders property, for a total limestone deposit of fifty-nine million seven hundred eighty thousand (59,-780,000) tons, with a gross value of [at one dollars sixty cents ($1.60) per ton] approximately forty million dollars ($40,000,000). Magnolia had purchased one million two hundred thousand dollars ($1,200,000) worth of equipment to be installed at the quarry site on the Gant property. Its successor, Stone Company, bought and installed a different type of crushing equipment at a total cost of more than four million dollars ($4,000,000), and the changes in the equipment and mode of operation were nearing completion at the time of the trial in the lower court. During the changeover period, Stone Company produced eight hundred forty-six thousand (846,000) tons of limestone from April, 1974. As the changeover was progressively completed, production increased to the extent that, at the time of trial, it amounted to an annual rate of over one million (1,000,000) tons. Stone Company was also in the process of organizing a Mississippi corporation for the purpose of building a railroad spur from the quarry to the ICG mainline at an estimated cost of three million dollars ($3,000,000).
There is little dispute in the record as to the facts. All of the appellees from Lambert through Stone Company had actual and constructive knowledge of the agreement between appellant and Lambert, and all transfers of rights from Lambert through Stone Company were made with the knowledge of appellant’s interest in the royalties. The appellees take the position that the operation was not feasible and that such interest was cancelled under the agreement. They also contend that appellant’s interest related only to the Sanders property, from which no limestone had been mined. The plant and quarry were on the Gant property and the limestone which had been produced came from that property.
The chancellor found that the operation was commercially feasible, and he rejected lack of feasibility as a defense. He further found that appellant is entitled to five cents (5<p) per ton for all limestone, sand, gravel and clay which has been mined from the Sanders property, but that appellant has no interest in such minerals, which have been, or would be, mined from the Gant and Hiawasee properties. The chancellor required appellees to provide appellant with a complete accounting of the limestone removed from the Sanders property since April 1, 1969, and, upon completion of the accounting, that the parties apply to the court for the fixing of a time and place for further hearing in the matter.
In Roberts v. Corum, 236 Miss. 809, 112 So.2d 550 (1959), the Court said:
“Contracts are solemn obligations and it is not the function of the courts to make contracts for parties, but rather to give effect to them as written.
$ sf: sf: sfc $ sf:
. We think, however, that it is the sounder policy to adhere to the principle so deeply embedded in our jurisprudence that the plain and unambiguous language of a contract should be construed as written.” 236 Miss. at 822, 823, 112 So.2d at 554, 555.
*922 See also Employers Mutual Casualty Co. v. Nosser, 250 Miss. 542, 164 So.2d 426 (1964).
Appellant and Lambert acknowledged and agreed, on September 27, 1968, that appellant discovered the mineral deposit and made it possible for Lambert to mine and develop same. Lambert agreed that, should he open any other business related to the industry, appellant would be paid a royalty of five cents (5$) per ton on minerals produced from such other source. On March 11, 1970, Lambert transferred his rights to Magnolia, particularly on the Gant property, and expressly provided:
“Further that the party of the first part (Lambert) hereby agrees that if the party of the second part (Magnolia) takes over a contract between the party of the first part and Ed Miller dated September 27, 1968, (which it did by appropriate corporate action) in which Ed Miller is to receive Five ($.05) Cents per ton for all limestone mined and sold from the said twenty-five acres that the party of the second part shall deduct the said Five ($.05) Cents per ton paid to Ed Miller thereby leaving a net of Six ($.06) Cents per ton on all limestone mined and sold from the said twenty-five (25) acres to be paid to the party of the first part.” (Emphasis added)
In an identical royalty contract, executed at the same time between the parties and covering a 34-acre Hiawasee property, the same language was used with respect to Miller’s royalty interest in that property. Also, in an assignment prepared by Keenum and his law partner, but not executed by Miller, the following phrase was set forth: “. . . the Five ($.05) Cent per ton royalty to be paid to (Miller) by George Lambert on any limestone produced and sold in the State of Mississippi.” With reference to that phrase, Keenum testified:
“I am not sure where we got the information that Mr. Miller’s royalty pertained to any royalties from George Lambert in the State of Mississippi, but it probably was because if this quarry went in, it would be the only quarry in the State of Mississippi.”
We are of the opinion that the agreement between appellant and Lambert on September 26, 1968, covers the Sanders, Gant and Hiawasee properties, that the chancellor manifestly erred in limiting royalty to the Sanders property and in excluding royalty from the Gant and Hiawasee properties, that the judgment of the lower court should be affirmed as to the Sanders property, and reversed and judgment rendered here as to the Gant and Hiawasee properties. Lampley v. Pertuit, 199 So.2d 452 (Miss.1967) and Employers Mutual Casualty Co. v. Nosser, supra. Accordingly, the judgment of the lower court is affirmed in part, reversed and rendered in part and remanded to the trial court for an accounting and such further action which may be consistent with this opinion.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART; AND REMANDED TO TRIAL COURT FOR FURTHER ACTION CONSISTENT WITH THIS OPINION.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.