DeMARION JANITORIAL SERVICES, INC., Plaintiff,

v.

UNIVERSAL DEVELOPMENT CORPORATION, Defendant.

No. EC 84–02–GD–D.

United States District Court, N.D. Mississippi, E.D.

Dec. 26, 1985.

**1354**

Howard Gunn, Aberdeen, Miss., for plaintiff.

J. Robertshaw, Robertshaw, Terney & Noble, Greenville, Miss., for defendant.

## OPINION

DAVIDSON, District Judge.

This is an action seeking damages for breach of contract brought by the plaintiff DeMarion Janitorial Services, Inc., (DeMarion) wherein the plaintiff alleged that the defendant Universal Development Corporation, Inc. substantially and materially breached a janitorial services contract entered into by the parties by tendering payments under the contract in an untimely manner. The defendant Universal Development Corporation, (Universal), denies that it breached the contract and by way of counter-claim alleged that it is entitled to damages for the cost of certain janitorial services that Universal provided after De-

Marion abandoned the premises in Vicksburg, Mississippi. After a bench trial, the court proceeds to make its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I

### FINDINGS OF FACT

The parties to this action entered into a written contractual agreement on January 4, 1983 whereby DeMarion agreed to provide janitorial services to a building located at 1500 Walnut Street in the City of Vicksburg, Mississippi. At the time of execution of the contract, the building was owned by the defendant Universal Development Corporation. The contract, which was prepared by Universal, was for a term of thirty-six months commencing on January 1, 1983 and continuing up and through December 31, 1986. The written contract which very specifically set out the services to be performed by DeMarion and the frequency of the same provided that payments of $6,460.00 per month would be made during the thirty-six month term of the agreement "*on or about* the 15th day of each calendar month in arrears," [1] (emphasis added).

DeMarion, a Mississippi corporation, since 1972 has been in the business of furnishing janitorial services under contract for commercial and governmental buildings. Universal, an Alabama corporation, is in the business of constructing commercial buildings and leasing them to various tenants including governmental agencies and the General Services Administration. The court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C., Section 1332(a) as stipulated to by the parties in the pretrial order.

The contract which is the subject matter of the case *sub judice* related to janitorial services for the building situated at 1500 Walnut Street in Vicksburg, Mississippi, which was owned by Universal and was

---

1. The payments were increased voluntarily by the parties to $6,760 for the month of May, 1983. There was no written amendment to the contract but the proof was that additional space was added and by agreement the parties agreed to the increased payment for services commencing in May 1983.

under a long term lease to the United States (GSA). Prior to entering into the three year contract in January, 1983, the parties to this action had a similar one year contract for janitorial services for the calendar year 1982. The 1982 contract had an identical provision providing for payments *"on or about"* the 15th day of the calendar month. The exhibits and testimony reveal that payments under the previous contract were received and deposited by DeMarion from two to twenty-six days after the 15th day of each calendar month.

The payments pursuant to the 1983 contract were with one exception mailed from Universal's office in Birmingham, Alabama to DeMarion's post office address in the City of Aberdeen, Mississippi. DeMarion's ledger sheet and testimony, together with cancelled checks introduced into evidence, revealed the receipt of payments and endorsements of the appropriate checks from Universal as follows during the year 1983, to-wit:

| Month Service Rendered | Received | Bank Endorsement |
|---|---|---|
| January | 2/16/83 | 2/17/83 |
| February | 3/14/83 | 3/16/83 |
| March | 4/15/83 | 4/17/83 |
| April | 5/11/83 | 5/13/83 |
| May | 6/29/83 | 6/30/83 |
| June | 7/22/83 | 7/26/83 |
| July | 8/25/83 | 8/29/83 |
| August | 9/15/83 | 9/16/83 |
| September | 10/18/83 | 10/20/83 |

Mr. Marion, the president of DeMarion drove to Birmingham to pick up the check for July, 1983 services on August 25, 1983. The remaining checks under the 1983 contract and all checks under the 1982 contract were mailed to DeMarion at its business address in Aberdeen, Mississippi. When the October check was not received on November 15, 1983, Mr. Marion called the Universal office and requested prompt payment. When the check had not been received on November 21, 1983, Mr. Marion called Universal's office two times and requested that payment be stopped on Check No. 16327 which employees of Universal stated had been issued and placed in the mail to DeMarion. Mr. Marion requested that a replacement check be issued and furnished to him. Mr. Stump of Universal refused to issue a new check until the previously issued check had been located or he had received authorization to issue a replacement or new check by his superiors at Universal. Mr. Marion, on November 21, 1983, removed all of his equipment and personnel from the 1500 Building and ceased all performance under the terms of the contractual agreement. DeMarion has performed no services at the subject premises since November 21, 1983.

On November 22, 1983 Universal mailed its letter to DeMarion stating that in its opinion the abandonment of the premises by DeMarion constituted a substantial breach of the contract and stated that they had therefore stopped payment on Check No. 16327 which had previously been mailed to DeMarion. Subsequent to November 21, 1983, Universal undertook to provide janitorial services to subject building and the uncontradicted proof was that Universal expended $167,736.47 for the period commencing on November 21, 1983 up to and including March 31, 1985. During the 10⅔ months that DeMarion performed pursuant to the contract it expended $5,593.71 per month or a total of $59,666.24 for labor, supplies, and other expenses related to the contract. DeMarion did not question the reasonableness or necessity of the expenditures made by Universal subsequent to November 21, 1983. The witness from Universal was not cross-examined by DeMarion as to the reasonableness of the expenditures, nor was any objection made

to the introduction of exhibits related to subject expenditures. DeMarion did not introduce evidence addressed to Universal's obligation, if any, to mitigate damages. The building was sold by Universal in March, 1985 with possession being delivered to the third party purchaser on April 1, 1985.

The negotiations between the parties relative to services to be performed including the time, mode, and method of payment transpired prior to the execution of the written contract on January 4, 1983. Mr. Marion, the president of the plaintiff corporation, testified that in his opinion the term "on or about the 15th day of the month" was synonymous with "on the 15th day of the month." The contract was executed by Mr. Marion, the president of DeMarion Corporation and by Mr. Ward, the president of Universal. DeMarion, although accepting payments after the 15th day of the month on numerous occasions, did protest and request earlier payments.

It was stipulated by the parties that Check No. 16327 dated November 15, 1983 was issued by Universal and that it was properly addressed to DeMarion's Aberdeen, Mississippi address. The secretary and vice-president of Universal testified that the November 15, 1983 check had been placed in the mail, postage prepaid, to DeMarion's usual business address, Post Office Box 865, Aberdeen, Mississippi 39730, prior to receiving Mr. Marion's calls on November 21, 1983. The parties further stipulated that subject check had not been returned by postal authorities to Universal. The check had not been received by DeMarion on November 21, 1983. The court finds that the check had been mailed in the ordinary and customary manner by Universal prior to November 21, 1983.

## II

### CONCLUSIONS OF LAW

#### A. CLAIM OF PLAINTIFF DEMARION

The issues presented in DeMarion's claim require this court to interpret the "on or about" language respecting payments to be made under the terms of the written contract entered into by and between the parties to this action. The court further must adjudicate the respective rights of the parties concerning the November 1983 payment for October 1983 services that was placed in the mail but not received by the payee DeMarion.

It is firmly entrenched in the jurisprudence of Mississippi that this court must, in this diversity case, construe the written contract as made by the parties, giving the words of the document their commonly accepted meaning. If no ambiguity exists, this court must accept the plain meaning of the instrument as the intent of the parties and give effect to the instrument accordingly. The court recognizes that contracts are solemn obligations and the court must give them effect as written. *Freeman v. Continental Grain Co.*, 381 F.2d 459 (5th Cir.1967); *Humble Oil and Refining Co. v. Standard Oil Co.*, 363 F.2d 945 (5th Cir.1966); *Allen v. Powell*, 260 So.2d 182 (Miss.1972); *Roberts v. Corum*, 236 Miss. 809, 112 So.2d 550 (1959); *Hamilton v. Transcontinental Gas Pipeline Corp.*, 236 Miss. 429, 110 So.2d 612 (1959); *Zouboukos v. Costas*, 232 Miss. 860, 100 So.2d 781, *sugg. of error overruled*, 232 Miss. 860, 102 So.2d 121 (1958).

In the case *sub judice* the pertinent provisions of the contract are stated as follows, to-wit:

In return for the performance of the above services, Universal Development Corporation agrees to pay DeMarion $6,460 per month on or about the 15th day of each month in arrears for the 36 month term of this agreement.

Black's Law Dictionary, 982 (5th ed. 1979) defines the term "on or about" as follows, to-wit:

A phrase used in reciting the date of an occurrence or conveyance, or the location of it to escape the necessity of being bound by the statement of an exact date or place; approximately; about; without substantial variance from; near.

Courts have recognized "on or about" provisions in contractual documents relative to payment to mean approximately or within a reasonable time from a specified date.[2] In *Heath v. Williams*, 25 So.2d 706 (Miss.1946), the Supreme Court of Mississippi held that the words "about the first of March" should be construed to be equivalent to "near the first of March."

█ The proof in the case *sub judice* is to the effect that all negotiations preceded the execution of the written contract and it is particularly noteworthy that the contract did not provide that time was of the essence. The court must conclude that the provisions concerning payment were clearly incorporated into the written document. The Mississippi cases consistently hold that prior or contemporaneous negotiations or statements made by the parties prior to entering into a contract are merged into the contract unless there is evidence to indicate that the contract was not a complete and exclusive agreement or that unilateral or mutual mistake was involved. *See e.g. Jackson v. Sam Finley, Inc.*, 366 F.2d 148, 154–55 (5th Cir.1966).[3] It is the opinion of the court that the words "on or about" are not ambiguous and that it is accordingly the duty of this court to give the words their plain and ordinary construction and meaning. The words "on or about the 15th day of each month" are construed to provide for payment "on approximately the 15th day of the month" or "within a reasonable time from the 15th day of the month."

The secretary and vice-president of Universal testified that on November 15, 1983, Check No. 16327, payable to DeMarion had been issued and that the same was placed in the mail prior to Mr. Marion's telephone calls on November 21, 1983, postage prepaid to DeMarion's usual and customary address in the City of Aberdeen, Mississippi. The presumption of law, recognized in Mississippi, is to the effect that the mailing postage prepaid to a correct address presumes that the addressee received the document so mailed.[4]

This court, as well as the Mississippi Supreme Court, has held that where a letter was mailed in an envelope addressed to the addressee postage prepaid through the United States mail enclosing certain documents, the presumption obtained that the documents were received by the addressee and the addressee had the burden of rebutting the presumption with credible evidence. *Perdue Farms, Inc. v. Motts, Inc. of Miss.*, 459 F.Supp. 7, 29 (N.D.Miss.1978); *Threatt v. Threatt*, 212 Miss. 555, 54 So.2d 907, 909 (1951). This court has further held that where by the usual course of dealing a creditor has assented to payment by mail and a letter containing a remittance, properly addressed and with postage prepaid is placed in the mail, the payment is effective as ·of the date of mailing. *American River Lines, Inc. v. Central Soya Co., Inc.*, 524 F.Supp. 246, 248 (N.D. Miss.1981).

---

**2.** In *U.S.F. & G. Contracting Co. v. Grace*, 263 F. 283 (3rd Cir.1920), the Third Circuit Court of Appeals held that a contractual provision providing for payment "on or about" the fifteenth day of each month should be construed to allow the payor a reasonable time after the fifteenth day of the month in which to tender payment.

*Walton v. Denhart*, 226 Or. 254, 359 P.2d 890, (1961), the Oregon Supreme Court held that the words "on or about" did not mean "exactly" but meant "approximately." It was held that a construction contract that provided for payment on or about May 15 should not be interpreted to preclude performance on June 30. The June 30 performance was in such a reasonable time after the date specified in the contract as to preclude the purchaser of a dwelling from withdrawing from the contract.

**3.** The Fifth Circuit in *Jackson v. Finley, supra,* citing Mississippi case law specifically stated that a meeting of the minds is not required for a valid contractual provision and that if the contractual language unambiguously indicates an agreement, the fact that this may not correspond to the actual understanding of the parties will not justify the admission of parol evidence to modify the language of the contract. *Id.* at 155.

**4.** McCormick's *Handbook on the Law of Evidence,* (2 Ed.1970), Section 343 at p. 807–808. 1 J. Wigmore, *1 Treatise on the Anglo American System of Evidence,* (3rd Ed.1940) Section 95.

■ The two employees of Universal specifically testified that the November 15 check, the same being No. 16327, was placed in the mail postage prepaid to the correct business address of DeMarion in the usual course of business. DeMarion's only offer of proof was that it had not received the check. The court holds that the payment for October 1983 services was tendered to DeMarion within a reasonable time after the 15th day of the month pursuant to the contract and the prior dealings of the parties. It is the opinion of the court that Universal had not breached the contractual agreement at the time DeMarion elected to abandon the 1500 Walnut Street Building and that in removing its personnel and equipment from the premises, DeMarion did in fact breach the contractual agreement and acted at its peril. It is the opinion of the court that DeMarion should not recover on its complaint against Universal Development Corporation.

## B. UNIVERSAL'S COUNTER–CLAIM AGAINST DEMARION.

The uncontradicted proof was to the effect that after DeMarion removed all of its personnel, supplies and equipment from the building on November 21, 1983, that Universal provided janitorial services to the building for the remainder of the contract term up until the building was sold and possession of the same delivered to a third party purchaser on April 1, 1985. The proof of Universal was that during the period from and after November 21, 1983 it expended $167,736.47 on janitorial services to subject premises. Its payments to DeMarion pursuant to the written contract during the period of time aforesaid would have been $121,680.00. The latter figure includes payments for October, 1983 and up until November 21, 1983 to which DeMarion was unquestionably entitled.

It is significant that DeMarion did not question the amounts expended by Universal to provide subject janitorial services. No witness was called by DeMarion to testify as to what reasonable and necessary services should have been provided to subject premises nor the cost of the same. DeMarion did not object to the introduction of Universal's exhibits establishing subject expenditures, nor did it cross-examine the witness for Universal concerning the counter-claim. The term "mitigation of damages" was never mentioned by DeMarion during the trial of this matter.[5]

It has been consistently held that the burden is on the party relying on the matter in mitigation or reduction of damages to make proof of the facts that will operate to bring about the mitigation. In an Admiralty case applying Mississippi law, the Fifth Circuit Court of Appeals stated that the burden of proof was on the defendant to show that the plaintiff failed to mitigate damages. It was specifically held that the defendant must demonstrate "(1) that the conduct (of the plaintiff) was unreasonable and (2) that it had the consequences of aggravating the harm." The party who has committed a wrong does not escape the full consequences of his act if the injured party acts unreasonably after the wrong but such action has no import on the scope of the harm suffered. *Tennessee Valley Sand and Gravel Co., v. M/V Delta*, 598 F.2d 930, 933 (5th Cir.1979). In *Poteete v. City of Water Valley*, 207 Miss. 173, 42 So.2d 112 (1949), the trial court gave a jury instruction to the effect that it was the duty of the plaintiffs to mitigate their damages. In reversing this case, the Mississippi Supreme Court stated:

Upon the trial of this case, the city offered not one word of evidence to support the above instruction. It made no showing that it would have been possible for appellants to ditch or levy against the waters alleged to have flowed from the street onto their property, nor what

5. The Fifth Circuit Court of Appeals has stated that the so-called duty to mitigate or minimize damages is a misnomer because a victim owes no duty to the person who hurts him. As stated by the Fifth Circuit, "The principle, correctly stated, is that the injured person may not recover damages that do not result proximately from the defendant's breach of duty. *Gideon v. Johns-Mansville Sales Corporation*, 761 F.2d 1129, 1139 (5th Cir.1985).

would have been the cost or proximate cost of such ditch or levy. The record is wholly void of any proof to support the instruction.

42 So.2d at 113.

The Supreme Court of Mississippi concluded that the granting of the instruction concerning the duty to mitigate damages was erroneous under a long line of cases to the effect that an instruction should not be granted unless supported by evidence. *Id.* In *Entex, Inc. v. Rasberry*, 355 So.2d 1102 (Miss.1978), when an issue was raised as to the reasonableness of bills for the rental of replacement vehicles after an automobile accident, the Mississippi Supreme Court held that it was well settled that there must be proof of such reasonableness or lack thereof and that such proof must be demanded by the party claiming a failure of the duty to mitigate. *Id.* at 1104. In *Pelican Trucking Company v. Rossetti*, 251 Miss. 37, 170 So.2d 573 (1965), the court stated:

> Without objection by the defendant, the bill from Hertz ... was admitted in evidence. If the defendant had objected on the ground that the plaintiff must show its reasonableness and necessity, such objection should have been sustained, but none was made.

*Id.*, 170 So.2d at 574.

It is the opinion of this court that the counter-defendant DeMarion has totally and wholly failed to meet the burden of proof in this case relative to the mitigation or reduction of damages. It is further the opinion of the court that Universal was obligated to provide janitorial services to its tenants in the Walnut Street Building in Vicksburg, Mississippi and that it is entitled to recover the amount of $46,056.47 from DeMarion. The court arrives at damages in this case by reducing the $121,680.00 that DeMarion would have been entitled to had it performed its contractual obligations during the contract period from the $167,736.47 that Universal was forced to provide as a result of DeMarion's breach of its contractual obligations.

The court therefore finds as follows:

(1) That DeMarion's original claim against Universal is dismissed with prejudice.

(2) That Universal is entitled to judgment of and against DeMarion in the amount of $46,056.47.

A judgment will issue accordingly, taxing the plaintiff with all costs of these proceedings.