IRVING, J.,
 

 for the Court:
 

 ¶ 1. Dr. Robert Holbert owned the Gautier Medical Clinic P.A. in Gautier, Mississippi. In 2000, Dr. Holbert sold the clinic to Dr. Rick Hoover. Around the time of the sale, Dr. Hoover executed a promissory note to Dr. Holbert in the amount of $100,000. Dr. Hoover refused to pay the note, claiming that it was merged into a subsequent asset purchase agreement. Dr. Holbert sued Dr. Hoover in the Jackson County County Court. The county court ruled in favor of Dr. Holbert, and Dr. Hoover appealed to the Jackson County Circuit Court, which found that the promissory note was valid and affirmed the judgment of the county court. Dr. Hoover now appeals, claiming that the par-ol-evidence rule “strictly prohibits bringing in the prior promissory note to alter the unambiguous terms of the subsequent Asset Purchase Agreement.... ”
 

 ¶ 2. We agree with the county court that the promissory note is valid and enforceable. Accordingly, we affirm the circuit court’s judgment.
 

 FACTS
 

 ¶ 3. On August 18, 2000, Dr. Hoover executed a promissory note to Dr. Holbert for $100,000. In its entirety, the note states:
 

 I[,] Rick Hoover[,] promise to compensate Robert Holbert $100,000. This compensation will become due Aug. first 2005. Furthermore^] there will be interest paid at the rate of. 5% each year on the principle of $100,000.
 
 This compensation is for remuneration for services and goods rendered.
 
 This promissory note may not be reduced.
 
 This is a personal as well as a business debt.
 
 In the event of Robert Holbert’s death[,] this compensation will be paid to his legitimate heirs. In the event of the death or disability of Rick Hoover this compensation will be paid by his estate. In the event of disability[,] arrangements will be made as necessary. It would be expected a legitimate effort would be made to respect this compensation. This promissory note is a legitimate debt and would be considered a ligament [sic] debt were it to be tried in court. All services and goods have been rendered complete for this contract. There are no outstanding contributions to be made by Dr. Holbert to Dr. Hoover for this compensation.
 
 This note represents a complete contract and does not require any fmther documentation for payment due.
 

 (Emphasis added). On the same day, Drs. Hoover and Holbert entered into an “As
 
 *253
 
 set Purchase Agreement” for the sale of Dr. Holbert’s medical clinic to Dr. Hoover. The relevant portions of that agreement are as follows:
 

 THIS Asset Purchase Agreement is made the 18th day of August, 2000[,] by and between RICK D. HOOVER, M.D., hereinafter referred to as “Purchaser[,”] and ROBERT D. HOLBERT, M.D. and GAUTIER MEDICAL CLINIC, P.A., hereinafter referred to as “Sellers[.”]
 

 WHEREAS, Sellers own the Accounts Receivable, inventory!,] and other assets utilized by Sellers in the practice and on the real property of the practice;
 

 WHEREAS, Purchaser is a licensed medical doctor who desires to purchase, own, manage[,] and operate the medical clinic owned by Sellers;
 

 NOW THEREFORE, in consideration of the mutual covenants and agreement in [sic] contained, Sellers agree to sell to Purchaser the assets described herein and Purchaser agrees to purchase such assets from Sellers on the terms and conditions provided in this agreement!.]
 

 ⅝ ⅝ ⅜
 

 ARTICLE II
 

 A. SALE AND PURCHASE OF ASSETS
 

 1. Upon the terms and subject to the conditions of this Agreement, effective as of the Closing Date, Sellers shall sell, transfer, assign, convey!,] and deliver good and marketable title to the Assets to Purchaser, and Purchaser shall purchase the Assets from Sellers free and clear of any Encumbrances other than Encumbrances specifically assumed by Purchaser, for the consideration set forth in this Agreement. Purchaser shall not purchase the Excluded Assets. The sale, transfer, assignment!,] and conveyance of the Assets shall be made by the execution and delivery at Closing of a bill of sale ... as of the Closing Date and a recordable warranty deed executed by Sellers, as shown on Exhibit 2.2, and other instruments of assignment, transfer!,] and conveyance as Purchaser shall request.
 

 [[Image here]]
 

 8. Consideration for sale and transfer for the purchase price for the assets shall be payable at closing in cash in the amount of $300,000 for the personal and real property conveyed in transfer herein.
 

 9. Sellers shall at any time, and from time to time, at and after the closing upon request of the Purchaser shall [sic] take any and all steps necessary to place Purchasers [sic] in possession [sic] an operating control of the assets and business to be transferred hereunder.
 

 10.
 
 Warranties of Seller:
 
 Seller has no debts, liabilities, claims!,] or obligations (whether crude, absolute!,] contingent!,] known!,] or unknown or otherwise) of any nature whatsoever affecting the assets other than liabilities that have been specifically disclosed on the Tax Schedule.
 

 ⅜ ⅜ :¡í
 

 14.
 
 Authority, Binding Effect.
 
 Sellers have full power and authority to enter into this Agreement and to carry out the transactions contemplated hereby. The execution, delivery, and performance of this Agreement constitutes the valid and binding agreement of Sellers enforceable in accordance with its terms.
 

 ⅜ * *
 

 22.
 
 Allocation of Purchase Price:
 

 a. $230,000.00 — Purchase price for real property owned by Robert D. Holbert, individually.
 

 b. $70,000.00 — Purchase price for real property
 
 and
 
 non-real property owned by Gautier Medical Clinic, P.A.
 

 
 *254
 
 [[Image here]]
 

 ARTICLE IV
 

 A. SELLERHS RIGHT OF EMPLOYMENT
 

 1. Seller shall have the right for a period of two years, and longer if extended by the parties, to engage in the practice of medicine at the Gautier Medical Clinic location in Gautier, Mississippi. Seller shall receive as compensation the sum of 53% of all income received as a direct result of the practice of medicine.
 
 This agreement, the exhibits
 
 [,]
 
 and the schedules delivered pursuant hereto constitute the entire contract between the parties hereto. Pertaining to the subject matter hereof and to precede all prior and contemporaneous agreement, understandings, negotiations
 
 [,]
 
 and discussions whether written or oral of the parties and there are no representations, warranties
 
 [,]
 
 or other agreements between the paHies in connection with the subject matter hereof except as specifically set forth herein.
 

 (Emphasis added). Dr. Hoover contends that section one of article four invalidates the promissory note, which was executed shortly before the purchase agreement.
 

 ¶ 4. On August 16, 2004, Dr. Holbert filed suit against Dr. Hoover in the county court. The suit proceeded to trial, during which Dr. Holbert realized that the promissory note had not actually matured. Accordingly, on March 1, 2005, the county court dismissed Dr. Holbert’s suit without prejudice for being “filed prematurely.” The promissory note matured on August 1, 2005; however, Dr. Hoover refused to make any payments on the promissory note once that date had passed. On November 28, 2007, Dr. Holbert again filed suit in the county court. Both doctors filed motions for summary judgment, and the county court denied both motions after allowing the parties sixty days to conduct additional discovery. The only evidence that appears to have been produced during that sixty days was an affidavit from George Murphy, the attorney who drafted the purchase agreement. In its order denying the motions, the county court allowed the parties ten days in which to request a trial; the order stated that if trial was not requested, then the county court would rule on the record before it. No request for a trial was filed by either side, and the county court proceeded to rule on the case with the evidence it had. The county court found in favor of Dr. Holbert and ordered Dr. Hoover to pay $100,000 plus interest on the promissory note; Dr. Hoover was also ordered to pay court costs. Dr. Hoover filed an appeal to the circuit court, which affirmed the county court’s judgment.
 

 ¶ 5. Murphy’s affidavit stated that he had drafted the purchase agreement and that, to the best of his knowledge, the “contract was the entire agreement between the parties with regard to the subject matter therein. It was for that reason we placed the integration clause in the contract.” There was evidence showing that the $100,000 promissory note was executed because Dr. Hoover could only get financing for $300,000 while the sale price of the clinic was $400,000. In its order in favor of Dr. Holbert, the county court stated:
 

 The Plaintiff has proved by a preponderance of the [ejvidence that the parties reached an agreement to sell and purchase the Gautier Medical Clinic and the real estate for the sum of $400,000.00. However[,] the lending institution would only lend $300,000.00 based on the hard assets. The parties reached an agreement that the Defendant would pay an additional $100,000.00, reflected in the Note sued upon and executed on the same day as the documents consummat
 
 *255
 
 ing the sale and the Hoover’s [sic] loan from the Bank of $800,000.00, making a total purchase price of $400,000.00.
 

 After hearing oral argument, the circuit court stated the following:
 

 I have to note that even though the signatures, or the documents occurred— the signing of same on the same day, that the Asset Purchase Agreement is clear, and I don’t find it unambiguous. I mean, it makes it very clear that these two men entered into a contract for $800,000 to sell the business, and Dr. Hoover signed it, Dr. Holbert signed it in his individual capacity, and his corporate capacity, and it sets out with specificity what is being purchased, building, et cetera. The Promissory Note, on the other hand, is signed by different signatories, and it is for remuneration and services. Totally different from assets.
 

 ¶ 6. Additional facts, if necessary, will be related during our analysis and discussion of the issue.
 

 ANALYSIS AND DISCUSSION OF THE ISSUE
 

 ¶ 7. Dr. Hoover contends that the circuit and county courts erred in finding the promissory note enforceable. Dr. Hoover argues that the parol-evidence rule “strictly prohibits bringing in the prior promissory note to alter the unambiguous terms of the subsequent Asset Purchase Agreement” and that “summary judgment for Dr. Hoover was appropriate because the full agreed upon purchase price of $300,000 ... was paid in full.”
 

 ¶ 8. When reviewing the interpretation of a contract, we employ a de novo standard of review.
 
 Cherokee Ins. Co. v. Babin,
 
 37 So.3d 45, 48 (¶ 8) (Miss.2010). An appellate court “first look[s] to the express wording of the contract itself, looking at the contract as a whole, to the exclusion of extrinsic or parol ... evidence.”
 
 Id.
 
 (citing
 
 Warwick v. Gautier Util. Dist.,
 
 738 So.2d 212, 215 (¶ 8) (Miss.1999)). The “ ‘canons’ of contract construction” will then be applied “[i]f the parties’ intent is unclear....”
 
 Id.
 
 (citing
 
 HeartSouth, PLLC v. Boyd,
 
 865 So.2d 1095, 1105(26) (Miss.2003)). “Finally, if the meaning remains ambiguous, only then may the court consider extrinsic evidence.”
 
 Id.
 
 (citing
 
 HeartSouth,
 
 865 So.2d at 1105 (¶ 26)).
 

 ¶ 9. The basis of this suit is the promissory note, not the asset purchase agreement. Therefore, we must look at the promissory note to see if its meaning can be ascertained from its express terms. We find that it can. The promissory note stated that it was “for remuneration for services and goods rendered.” No reference was made to the sale of the medical clinic, and the promissory note concluded by stating that: “This note represents a complete contract and does not require any further documentation for payment due.” The intent of the promissory note is clear from its terms: it represents a debt owed by Dr. Hoover to Dr. Holbert in the amount of $100,000 for “services and goods rendered.” The note indicated that the debt was personal as well as business related. The purchase agreement, testimonies, and Murphy’s affidavit all constitute parol evidence as to the promissory note. Since the terms of the promissory note are explicit and easily understood, it would be improper to consider any extrinsic evidence. In short, the promissory note constitutes a separate legal obligation from the asset purchase agreement, and the two should not be considered together. The county court was correct in entering a judgment against Dr. Hoover for $100,000 plus interest and court costs, and the circuit court was correct in affirming that judgment.
 

 
 *256
 
 ¶10. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. ISHEE, J., NOT PARTICIPATING.