LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On December 10, 2009, BMR Funding LLC (BMR) filed two lawsuits in the Hinds County Chancery Court to eject Congress Street Properties LLC (CSP) and 930 Blues Café LLC from commercial properties BMR had acquired through foreclosure proceedings. Both CSP and 930 Blues Café were owned by Isaac K. Byrd. The cases were consolidated, and the chancellor ultimately found in favor of BMR, ordering Byrd to relinquish possession of the properties to BMR. Both CSP and 930 Blues Café appealed, asserting the following issues: (1) the chancellor erred in finding the CSP deed of trust was enforceable, and (2) the chancellor erred in finding the 930 Blues Café deed of trust had not been satisfied.
FACTS

CSP

¶ 2. In 2002, CSP purchased certain real property located between President and Congress Streets in Jackson, Mississippi. The property included an office building, three lots, a ten-foot strip of a fourth lot numbered 939 North President Street, and a vacant lot numbered 933 North President Street. CSP borrowed $618,000 from SouthTrust Bank to purchase the property, with Byrd personally guaranteeing the debt. To secure payment, SouthTrust was granted a deed of trust. SouthTrust merged with Wachovia Bank, and the deed of trust was eventually assigned to BMR.
¶ 3. The legal description of the property on the first page of the CSP deed of trust provides:
See Exhibit “A,” which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein,
The Real Property or its address is commonly known as 939 North President Street, Jackson, MS 39201.
Exhibit A to the CSP deed of trust contained a legal description identical to the legal description in the special warranty deed. However, when the CSP deed of trust was originally recorded, Exhibit A was accidentally omitted. The CSP deed of trust was initially recorded on May 9, 2002. The CSP deed of trust, including Exhibit A, was re-recorded on June 19, 2002. According to the record, Byrd was notified of the re-recording via letter, and *27 he was sent a copy of the re-recorded CSP deed of trust, including Exhibit A.
¶ 4. CSP has stipulated it is in default on the loan. CSP alleged that the attaching of Exhibit A to the CSP deed was a fraudulent, material alteration thereby rendering the deed of trust void. Byrd stated the only collateral he intended to pledge for the $618,000 loan was the property located at 939 North President Street, and not 933 North President Street. The chancellor determined the re-recorded CSP deed of trust simply corrected the mistake and was not a fraudulent, material alteration.

930 Blues Café

¶ 5. During other real-estate transactions, Byrd also executed a deed of trust in favor of SouthTrust, now BMR, on the 930 Blues Café property. Another one of Byrd’s properties, Northgate, sold for $900,000, which was well below the amount of Byrd’s loan of $1.3 million. In order to release BMR’s security interest and allow the sale of the Northgate property to proceed, Byrd and his business entities were required to make a payment of $200,000. The 930 Blues Café property was used as additional security for the $200,000 payment, and a deed of trust was executed in favor of BMR. The 930 Blues Café deed of trust states the property was used to secure payment of the $200,000 as well as “other amounts due and payable or which may become due and payable under this Deed of Trust, the Reaffirmation Agreement[,] or any other agreement between Grantor and Beneficiary....” Byrd also executed a “Reaffirmation Agreement,” which provided the $200,000 payment was a “partial credit against the indebtedness.”
¶ 6. Byrd argued to the chancery court that the 930 Blues Café deed of trust was intended to secure only the $200,000 payment and should have been released upon the payment of the same. BMR, however, contended the deed of trust secured the entire outstanding indebtedness, which was in default at the time of the foreclosure. The chancellor agreed with BMR’s position.
STANDARD OF REVIEW
¶ 7. This Court will not reverse a chancellor’s decision unless the decision was manifestly wrong, clearly erroneous, or unsupported by substantial evidence. City of Picayune v. S. Reg’l Corp., 916 So.2d 510, 518 (¶ 22) (Miss.2005) (citations omitted).
DISCUSSION
I. CSP DEED OF TRUST
¶8. CSP argues that clear and convincing evidence proves the CSP deed of trust was materially altered, rendering it void. The material alteration of a deed is an affirmative defense that must be proved by clear and convincing evidence. Tate v. Rouse, 247 Miss. 545, 550, 156 So.2d 217, 219 (1963). Furthermore, to render the deed of trust void, the alteration must be the result of fraud and not an honest mistake or omission. Mullins v. Merchandise Sales Co., 192 So.2d 700, 704 (Miss.1966); see also McRaven v. Crisler, 53 Miss. 542, 546 (1876) (Even if alteration of a note was material, the alteration was made according to the intent of both parties to the instrument and honestly made to correct a mistake; thus, the note was not void.).
¶ 9. CSP contends the alteration was fraudulent because Byrd stated he never intended for the CSP deed of trust to encumber the property located at 933 North President Street, and the CSP deed of trust was re-recorded without his knowledge of the attachment. However, it is clear from the record that the re-recording of the CSP deed of trust to include Exhibit A was not a fraudulent alteration *28 for several reasons: (1) the CSP deed of trust specifically referenced Exhibit A as containing the legal description of the property; (2) Exhibit A included the description of both properties located at 989 North President Street and 933 North President Street; (3) Byrd was notified of the re-recorded deed of trust; (4) Byrd acknowledged the Assignment of Rents, which contained the same legal description as Exhibit A; (5) the 2005 foreclosure notice included the property described in Exhibit A; (6) the 2009 foreclosure notice included the property described in Exhibit A; and (7) Byrd made no objection prior to foreclosure proceedings.
¶ 10. The chancellor found CSP had failed to demonstrate by clear and convincing evidence that re-recording the CSP deed of trust to include the legal description of the property in Exhibit A was a fraudulent, material alteration sufficient to render the deed void. We agree and find substantial evidence to support the chancellor’s decision. This issue is without merit.
II. 930 BLUES CAFÉ
¶ 11. In regard to the 930 Blues Café deed of trust, Byrd argues the deed of trust was intended to secure only the $200,000 payment. According to our rules of contract interpretation, “where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract.” Turner v. Terry, 799 So.2d 25, 32 (¶ 16) (Miss.2001). If the terms of the contract are clear and unambiguous, parol evidence is inadmissible. HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1107 (¶ 36) (Miss.2003).
¶ 12. The courts use a three-step approach to interpret a contract:
First, the “four corners” test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Second, if the court is unable to translate a clear understanding of the parties’ intent, the court should apply the discretionary “canons” of contract construction. Finally, if the contract continues to evade clarity as to the parties’ intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiations, agreements!,] and conversations might be considered in determining the parties’ intentions in the construction of the contract.
Tupelo Redevelopment Agency v. Abernathy, 913 So.2d 278, 284 (¶ 13) (Miss.2005) (internal citations omitted).
¶ 13. The 930 Blues Café deed of trust states the property was used to secure payment of the $200,000 as well as “other amounts due and payable or which may become due and payable under this Deed of Trust, the Reaffirmation Agreement!,] or any other agreement between Grantor and Beneficiary....” Since this Reaffirmation Agreement was referred to in the deed of trust, we must construe this document along with the 930 Blues Café deed of trust. See United Miss. Bank v. Gen. Motors Acceptance Corp. Mortgage Co., 615 So.2d 1174, 1176 (Miss.1993). According to the Reaffirmation Agreement, the $200,000 payment was a “partial credit against the indebtedness.” This agreement also states that failure to pay “all amounts payable by Grantor to Beneficiary pursuant to the Reaffirmation Agreement and this Deed of Trust” triggers a default. And under the agreement, the $200,000 is considered “a credit against the indebtedness.” The chancellor determined the 930 Blues Café deed of trust specifically provided that it secured the full indebtedness, not just the $200,000 payment. We find substantial evidence in the record *29 to support the chancellor’s decision. This issue is without merit.
¶ 14. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. FAIR, J., NOT PARTICIPATING.